IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JASON CHRISTOPHER D.,[1] | Case No. 3:24-cv-00048-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Jason D. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in 1978, plaintiff alleges disability beginning May 14, 2012, due to back pain and bipolar disorder.[3] Tr. 222, 258. Plaintiff's applications were denied initially and upon reconsideration. On January 26, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-56. On May 15, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-29. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity from "May 14, 2012, the alleged onset date," through the date last insured of December 31, 2017. Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar spine degenerative disc disease, asthma, depression, a bipolar disorder, anxiety, and substance abuse." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff

---

[2] The record before the Court is approximately 2100 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff previously applied for and was denied disability benefits following an Administrative Law Judge hearing on January 16, 2015. Tr. 60-70.

Page 2 – OPINION AND ORDER

had the residual function capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except:

> [H]e can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to extreme cold, vibration, and atmospheric conditions such as fumes, odors, dust, gases, and poor ventilation. He can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. He can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less. He can never perform detailed tasks that require more than 30 days to learn. He can tolerate occasional changes in a routine work setting. He can tolerate occasional interaction with the general public.

Tr. 19-20.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as hand packager, electrical accessories assembler, and marker. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom testimony; and (2) improperly assessing the medical opinion evidence of treating nurse practitioner Lydia Bartholow and the state agency consulting psychologists.[4]

I.     **Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record

---

[4] Plaintiff also contends that the ALJ failed to conduct an adequate analysis at steps three and five. However, such arguments are premised predominantly on the aforementioned errors. *See, e.g.*, Pl.'s Opening Br. 8 (doc. 10). These arguments are therefore contingent upon a finding of harmful legal error in regard to the ALJ's treatment of the medical opinion evidence and/or subjective symptom testimony.

Page 3 – OPINION AND ORDER

contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." Smartt, 53 F.4th at 499.

At the hearing, plaintiff testified that he was unable to work due to back pain. Tr. 49-51. He also endorsed chronic depression and the inability to, at times, get out of bed for "three to four days a week." Tr. 52. During those times, plaintiff testified that he "won't go to appointments and [he'll] have to reschedule." *Id.* Plaintiff indicated he is currently taking medication for his depression and bipolar disorder which caused some side effects, such as dry mouth and sleeping

Page 4 – OPINION AND ORDER

difficulty. *Id.* As a result, his dose of lithium had been lowered which was "unfortunate because the lithium was working really good." Tr. 52-53.

In response to the ALJ's inquiry about interpersonal skills, plaintiff explained he can be "very irritable" and "very grumpy." Tr. 58. Using plaintiff's words, the ALJ asked what might trigger a "strike and bite" reaction in the workplace, to which plaintiff responded: "[If] they push me too far . . . I'll end . . . the conversation or whatever is going on, I'll end it by saying what I think about them, and . . . I could be pretty mean until they go away." Tr. 54.

After summarizing his hearing testimony, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, [but his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. Specifically, the ALJ cited to plaintiff's activities of daily living, history of conservative treatment, and the objective medical record. Tr. 20, 23-25.

First, the ALJ cited to plaintiff's ability to carry out daily activities such as grocery shopping, driving, and attending in-person appointments, "including daily visits to his Methadone clinic," as belying his hearing testimony. Tr. 20. "Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds).

Substantial evidence supports the ALJ's determination regarding this issue. For example, throughout the adjudication period, plaintiff consistently woke up at 4 a.m. to appear daily at the methadone clinic for his dosage. Tr. 289, 292, 1738, 1900, 2070-2088. The record also demonstrates that he drove, went on walks, grocery shopped twice a week, managed his own

Page 5 – OPINION AND ORDER

finances, and contributed to household chores without needing help or encouragement. Tr. 50-51, 290-92, 799, 1373, 1743, 1917, 1943, 1947. Further, plaintiff traveled to California with his parents for vacation in both 2017 and 2020.[5] Tr. 1218, 1606, 1612, 1615-16. The ALJ reasonably inferred from the aforementioned activities that plaintiff's mental functional abilities were greater than alleged. *See Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (affirming the ALJ's determination that the claimant was "quite functional" due to her ability to care for personal needs, cook, clean, shop, and manage finances).

Next, the ALJ denoted plaintiff's favorable response to medication and that, "despite his subjective complaints, no treating medical or mental health provider has described . . . chronic disturbances of mood, affect, cognition, sensorium, interpersonal functioning, or grooming and hygiene that would be persuasive evidence of psychological symptoms." Tr. 25. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

Here, plaintiff regularly saw Eric Shilland, D.O., at Solace Health from August 2013 through May 2019. Tr. 1206-09. In his notes from more than 30 visits, Dr. Shilland consistently observed plaintiff to have a "normal mood and affect" with "normal interaction and insight." Tr. 1206-10, 1212-39. From August 2019 through October 2022, plaintiff obtained treatment at the Blackburn Clinic, wherein providers consistently noted he was "clean and neatly dressed," with

---

[5] While in California for several weeks in 2020, plaintiff also attended at least one virtual appointment and arranged for his mental health medication prescription to be filled while there. Tr. 1612.

Page 6 – OPINION AND ORDER

"no psychosis" and a "clear" sensorium. Tr. 1307, 1316, 1562, 1593, 1600, 1743, 1747, 1751. And, as discussed in Section II, Blackburn Clinic chart notes demonstrate that plaintiff routinely attended appointments and generally presented as "pleasant."

Moreover, plaintiff has been prescribed lithium since January 2020 and consistently reported its beneficial and stabilizing impact. Tr. 1332, 1593, 1600, 1624, 1634, 1643, 1754, 1862; *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The record further reflects that plaintiff's worsening mental health symptoms were largely tied to substance use – however, he has received methadone treatment since March 2021 to manage opioid dependence, and has repeatedly expressed its efficacy.[6] Tr. 1512, 1515, 1533, 1518, 1900.

In sum, because the ALJ cited at least one legally sufficient reason, supported by substantial evidence, his decision is affirmed as to plaintiff's subjective testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d at 1190, 1197 (9th Cir. 2004) (ALJ's evaluation of the claimant's subjective symptom testimony may be upheld even if all the reasons preferred are not valid).

---

[6] Plaintiff struggled with substance abuse throughout the adjudicative period and there are conflicting self-reports within the record surrounding his periods of sobriety. For example, in April 2018, plaintiff reported during a psychiatric evaluation that he had "not used heroin for approximately 5 years" and his last "relapse [was] several years ago." Tr. 976. By contrast, plaintiff reported relapses to his primary care provider in May and July 2017. Tr 1221-22. Further, the record reflects that, between October 2019 and March 2021, plaintiff was actively (albeit intermittently) using. Tr. 1295, 1307, 1393, 1527, 1538, 1553, 1579, 1615. It was not until June 2021 that plaintiff reported extended sobriety after beginning methadone treatment. Tr. 1512. He noted to his medical provider that the previous opioid replacement was not effective because, despite taking it over the past seven years, he "never stopped using." *Id.* Plaintiff relapsed at least once during winter of 2022. Tr. 1851.

Page 7 – OPINION AND ORDER

## II. Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinions of Ms. Bartholow and state agency consulting sources Sergiy Barsukov, Psy.D., and Susan South, Psy.D. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[7] *Kevin R. H. v. Saul,* 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "that appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

### A. Ms. Bartholow

Ms. Bartholow, a provider at the Blackburn Clinic, began treating plaintiff's mental health symptoms in January 2020 with medication management. Tr. 1307, 1316, 1512, 1522, 1562, 1593, 1634, 1743, 1747, 1751, 1862, 1896, 1900, 1905, 1909, 1913, 1951. Plaintiff initiated counseling at the Blackburn Clinic with a different provider – i.e., Lilly Martin – in April 2022. The last treatment record from the Blackburn Clinic is dated October 2022. Tr. 1862.

---

[7] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi,* 32 F.4th 785, 792 (9th Cir. 2022).

Page 8 – OPINION AND ORDER

In February 2023, Ms. Bartholow completed a medical source statement at the request of plaintiff's attorney. Tr. 1951-54. She indicated that plaintiff suffers from bipolar disorder and severe opioid use disorder, which result in "anhedonia, irritability, amotivation, [and] suicidal thoughts." Tr. 1951. She opined that plaintiff was moderately[8] limited in his ability to understand, remember, and apply information because his "depressive state inhibit[ed] his cognition." Tr. 1952. She also indicated that plaintiff has marked limitations in his ability to interact with others, adapt or manage himself, and concentrate, persist, or maintain pace due to irritability, "mental amotivation," and the need for "support from mother to write a short/simple letter to this writer." *Id.*

In addition, Ms. Bartholow completed a "Mental Residual Functional Capacity" questionnaire in which she endorsed marked or extreme limitations across all categories, including plaintiff's ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; understand, carry out, and remember simple instructions; sustain an ordinary routine without special supervision; respond appropriately to usual work situations; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting extreme behaviors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in a routine work setting. Tr. 1953. She then specified plaintiff would miss more than 16 hours per month of work due to "sleep[ing] at least 50% of the work

---

[8] For the purposes of this form, "moderate" means the "individual's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Tr. 1952. "Marked" corresponds to a "serious limit[ation]" and "extreme" means "the individual is not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

Page 9 – OPINION AND ORDER

month" and that "[a]ny changes to [a] simple routine [were] likely to exacerbate mood symptoms." Tr. 1954.

> The ALJ found Ms. Bartholow's opinion "unpersuasive" for four reasons:
>
> First, the longitudinal record, including Ms. Bartholow's own treatment notes, show [plaintiff] has consistently exhibited appropriate, and at times "friendly" and "pleasant" interpersonal behavior with his various medical and mental health providers. Second, records from his various providers show that despite his use of a sedating medication, Methadone, [plaintiff] has consistently exhibited intact attention, concentration, and focus during appointments with his medical and mental health treatment providers. Third, the record shows that despite his allegation of poor motivation, he attends in-person and virtual appointments with his medical and mental health providers, visits his Methadone clinic daily, exhibited appropriate grooming and hygiene, and performs activities of daily living, such as grocery shopping and pet care. Fourth, Ms. Bartholow's opinion is inconsistent with the opinions of Drs. South and Barsukov, who had the opportunity to review evidence from multiple sources, including Ms. Bartholow and [plaintiff's] other mental health treatment providers.

Tr. 26-27.

The Court finds the ALJ properly considered the supportability and consistency of Ms. Bartholow's opinion. An ALJ may find a medical opinion unpersuasive where the provider's opinion is inconsistent with their own chart notes. *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024). Similarly, an ALJ may reject medical source opinion evidence that is inconsistent with the record. *Tommasseti v. Astrue*, 533 F.3d 1034, 1041 (9th Cir. 2008).

An independent review of the record reveals that Blackburn Clinic providers repeatedly observed plaintiff to be "pleasant," "friendly," and with a "euthymic affect." Tr. 1302, 1326, 1331, 1336, 1342, 1369, 1372, 1382, 1397, 1585, 1600, 1613, 1616-17, 1624, 1854, 1865, 1866, 1869-71, 1874, 1884, 1886, 1889, 1892-93, 1895. Similarly, Ms. Bartholow frequently described plaintiff's affect as euthymic. Tr. 1307, 1316, 1512, 1562, 1593, 1751, 1756, 1909, 1913. In one of the few references in the approximately 2100-page record to plaintiff appearing irritable, he was

also noted to have a "[l]inear coherent thought process, pleasant attitude, [and] no endorsement of suicidal ideation." Tr. 1865.

As denoted in Section I, Ms. Bartholow's chart notes consistently describe plaintiff's memory as "intact," sensorium as "clear," and thoughts as "logical, coherent, and goal oriented." Tr. 1307, 1316, 1562, 1593, 1743, 1909, 1913. Even when Ms. Bartholow occasionally observed plaintiff to be "scattered" as opposed to "goal oriented," she still described him as "logical" and "coherent." Tr. 1512, 1522, 1747, 1751. Furthermore, Ms. Martin regularly observed plaintiff to be "insightful" and have a "linear, coherent thought process." Tr. 1865, 1869, 1871, 1874, 1878, 1886, 1888, 1892.

Although plaintiff missed a handful of appointments at the Blackburn Clinic, he attended the overwhelming majority of his scheduled appointments. In particular, plaintiff attended over 70 appointments at the Blackburn Clinic between August 2019 and October 2022. There are ten "no call no shows" recorded and, of those, seven occurred during a discrete period when plaintiff was admittedly using. Tr. 1296, 1392, 1393, 1530, 1544, 1546, 1553, 1554, 1573, 1583. Moreover, as discussed above, plaintiff's daily activities contravene Ms. Bartholow's "marked" and "extreme" findings. Finally, as discussed in detail below, the only other medical opinions of record suggest that plaintiff can perform other work existing in the national economy. Tr. 81-87, 91-99. The ALJ's decision is affirmed as to this issue.

### B. Drs. Barsukov and South

In July 2021, Dr. Barsukov reviewed the record and opined that plaintiff does not have any adaptive or understanding/memory limitations, although he was moderately limited in regard to his social interactions and ability to have sustained concentration and persistence. Tr. 86. Dr.

Barsukov, in turn, wrote three narrative descriptions purporting to outline plaintiff's limitations in the aforementioned areas:

> (1) [Plaintiff] is capable of sustaining a normal workday/workweek to simple routine tasks that require multiple simple steps.
>
> (2) [Plaintiff] can carry out and maintain [concentration, persistence, and pace] for simple tasks. [He] would be unable to maintain [concentration, persistence, and pace] for more complex tasks [due to mental health symptoms]. [He] can sustain a normal day/week work for unskilled tasks/instructions but not complex.
>
> (3) [Plaintiff] is capable of appropriate co-worker and supervisor interaction. [He] would be incapable of greater than occasional general public contact [due to mental health symptoms].

*Id.*

Dr. South reviewed the record in February 2022. Tr. 97-98. She likewise opined that plaintiff did not have any adaptive or understanding/memory limitations but was moderately limited in regard to his social interactions and ability to have sustained concentration and persistence. Tr. 97-98. The narrative portion of her report specified that plaintiff is capable of "carrying out and maintaining attention/concentration for short and simple instructions but not detailed and complex ones," and "[occasional] general public contact." *Id.*

In formulating the RFC, the ALJ stated:

> I find the cognitive and social limitations proffered by Drs. South and Barsukov to be well supported by the objective clinical observations of [plaintiff's] treatment providers, his intact activities of daily living, and his routine courses of mental health and substance abuse treatment. This decision adopts specific limitations consistent with the assessments from Drs. South and Barsukov, and I find their opinions to be additional persuasive evidence that supports the overall finding of non-disability.

Tr. 26.

Initially, although plaintiff contends the ALJ effectively rejected the opinions of Drs. Barsukov and South by failing to include a "restriction to simple tasks/instructions [in] the RFC,"

Page 12 – OPINION AND ORDER

plaintiff's focus on the absence of such language is misplaced. Pl.'s Opening Br. 10 (doc. 10); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ is not required to mirror exact language proffered by doctors to properly adopt their limitations); *Osborn v. Comm'r Soc. Sec. Admin.*, 2016 WL 6133831, *9 (D. Or. Oct. 19, 2016) ("[a]n ALJ's RFC need not correspond precisely to a physician's limitations; rather, the ALJ must resolve ambiguities in the record and translate Plaintiff's impairments into concrete functional limitations"). The dispositive inquiry surrounds whether the ALJ's RFC represents a reasonable interpretation of the record, supported by substantial evidence.

Here, the ALJ found that plaintiff can "understand, remember and carry out simple and detailed tasks that can be learned in 30 days or less" and can "never perform detailed tasks that require more than 30 days to learn," which is not inconsistent with Drs. Barksukov and South's findings surrounding concentration, persistence, and pace. Tr. 20, 86, 97. Even assuming the ALJ erred in accounting for these doctors' opinions, the error was harmless because it was "inconsequential to the ultimate non disability determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation and internal quotations omitted).

As plaintiff acknowledges, the representative occupations identified by the VE each involve a General Educational Development ("GED") reasoning level of two. Pl.'s Opening Br. 10 (doc. 10). According to the Dictionary of Occupational Titles, level two GED reasoning requires a person to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to deal] with problems involving few concrete variables in or from standardized situations." DOT, App. C § III. The Ninth Circuit has repeatedly held that a restriction to simple tasks is consistent with GED level two reasoning. *See e.g., Abrew v. Astrue*, 303 Fed.Appx. 567, 569 (9th Cir. 2008); *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th

Page 13 – OPINION AND ORDER

Cir. 2008). The Ninth Circuit has also found "no appreciable difference between the ability to make simple decisions based on short, simple instructions and the ability to use commonsense understanding to carry out detailed but uninvolved instructions, which is what Reasoning Level 2 requires." *Ranstrom v. Colvin*, 622 Fed.Appx. 687, 688 (9th Cir. 2015) (citation and internal quotations, ellipses, and emphasis omitted).

Thus, the limitations identified by Drs. Barsukov and South are consistent with a GED reasoning level of two and the jobs identified by the VE. This is especially true considering the VE separately confirmed that all of the representative occupations were "considered simple and repetitive or routine with a skill level of 2 or less and a GED reasoning level of 2 or less."[9] Tr. 43-44. As such, the ALJ did not commit reversible error as to the state agency consulting source opinions.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 21st day of March, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

---

[9] Significantly, plaintiff was not limited to one- to two-step tasks or instructions. *Cf. Rounds v. Comm'r Soc. Sec. Admin*, 807 F.3d 996, 1003 (9th Cir. 2015) (apparent conflict exists "between [a restriction to] one- and two-step tasks, and the demands of Level Two reasoning"); *see also* Tr. 86 (Dr. Barsukov expressly noting that, while plaintiff is limited to "simple routine tasks," these tasks can "require multiple simple steps").